**This order is SIGNED.**



**Dated: July 22, 2015**



**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

|  |  |
|---|---|
| In re:<br><br>**BRIAN W. STEFFENSEN,**<br><br>Debtor. | Bankruptcy Number: 12-34004<br><br>Chapter 7 |
| **PEGGY HUNT, as Chapter 7 Trustee,**<br><br>Plaintiff,<br><br>vs.<br><br>**BRIAN W. STEFFENSEN,**<br><br>Defendant. | Adversary Proceeding No. 13-2192<br><br>Judge William T. Thurman |

## MEMORANDUM DECISION

The Court has three matters before it in this adversary proceeding filed by Peggy Hunt, the

Chapter 7 Trustee and Plaintiff. The first is Defendant Brian Steffensen's Renewed Motion for

Summary Judgment (the "Renewed Motion"). The second is the Trustee's Motion for Partial

Summary Judgment (the "Motion for Partial Summary Judgment"). The third is the Trustee's Motion

to Strike Defendant's Deposition Corrections Pursuant to Fed. R. Civ. P. 30(e) (the "Motion to Strike").

The Defendant filed a voluntary Chapter 7 petition on November 5, 2012, and the Trustee filed a timely complaint on June 3, 2013 seeking to deny the Defendant's discharge pursuant to 11 U.S.C. § 727(a)(2)(A) and (B); § 727(a)(3); § 727(a)(4)(A), (C), and (D), and § 727(a)(5).[1] The Defendant initially filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on July 12, 2013, and the Court conducted a hearing on that motion on September 24, 2013. At that hearing, the Court treated the Defendant's motion as one for summary judgment in accordance with Federal Rule of Civil Procedure 12(d) and gave the parties additional time to brief the issue in the context of summary judgment. The Court's treatment of the Defendant's motion to dismiss as one for summary judgment, however, was without prejudice to the Defendant arguing his motion to dismiss merged with a motion for summary judgment. The Defendant subsequently filed a combined motion to dismiss and for summary judgment. After briefing and oral argument, the Court issued its ruling dismissing the Plaintiff's claim under § 727(a)(4)(C) but denying the Defendant's motion in all other respects.[2]

The Defendant's Renewed Motion seeks summary judgment on all remaining claims, arguing succinctly that the undisputed facts show that the Plaintiff cannot carry her burden as to any of those claims. The Plaintiff's Motion for Partial Summary Judgment concerns only those claims alleged under § 727(a)(3) and § 727(a)(5). In conjunction with his opposition to the Plaintiff's Motion for

---

[1] All subsequent statutory references are to title 11 of the United States Code unless otherwise indicated.

[2] *See Hunt v. Steffensen (In re Steffensen)*, 511 B.R. 149 (Bankr. D. Utah 2014).

Partial Summary Judgment, the Defendant submitted seventy-five corrections to his deposition transcript, on which the Motion for Partial Summary Judgment relied. In response, the Plaintiff filed the Motion to Strike.

The Court conducted a hearing on all three motions on June 3, 2015, at which Steven T. Waterman and Jeffrey M. Armington appeared on behalf of the Plaintiff and the Defendant appeared *pro se*. The Court then took the matters under advisement. After carefully considering the parties' briefs, the evidence presented therewith, and the arguments of counsel, and after conducting its own independent research of applicable law, the Court now issues the following Memorandum Decision, which constitutes the Court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052.

## I.    JURISDICTION AND VENUE

The Court's jurisdiction over this adversary proceeding is properly invoked under 28 U.S.C. § 1334(b) and § 157(a) and (b). The Plaintiff's complaint seeks to deny the Defendant's discharge, making this a core proceeding under 28 U.S.C. § 157(b)(2)(J). Venue is appropriately laid in this District under 28 U.S.C. § 1409, and notice of the hearing on all three motions was properly given in all respects.

## II.    DISCUSSION

*A. Plaintiff's Motion to Strike*

Of the three motions at issue in this decision, the Motion to Strike must be addressed first. Its resolution will determine whether the Plaintiff may properly rely upon the original and uncorrected version of the Defendant's deposition as support for her Motion for Partial Summary Judgment. Federal Rule of Civil Procedure 30(e) provides:

3

**(1) Review; Statement of Changes.** On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

> (A) to review the transcript or recording; and

> (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

**(2) Changes Indicated in the Officer's Certificate.** The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.[3]

This Rule imposes three discrete procedural demands on the deponent or party requesting changes. These must be satisfied before a court will consider the propriety of the changes.[4] The first requires that the deponent "request review of his deposition before its completion."[5] In turn, "the officer conducting the deposition[—i.e., the court reporter—]must denote the request on [the] certificate" mandated by Rule 30(f)(1).[6] Requesting review is "an absolute prerequisite to amending or correcting a deposition under Rule 30(e)."[7]

In this case, the court reporter's certificate attached to the Defendant's deposition transcript does not specify whether he requested review of his deposition.[8] But at the very close of the

---

[3] Fed. R. Civ. P. 30(e), made applicable in adversary proceedings by Fed. R. Bankr. P. 7030.

[4] *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 265 (3d Cir. 2010).

[5] *Rios v. Bigler*, 67 F.3d 1543, 1552 (10th Cir. 1995).

[6] *Id.*

[7] *Id.*

[8] Docket No. 92, Trustee's Motion to Strike Defendant's Deposition Corrections Pursuant to Fed. R. Civ. P. 30(e), Ex. A, at 170.

4

deposition transcript, the Defendant stated: "I will want to read it and review it."[9] The Court considers this to be the request that Rule 30(e) calls for, and consequently, the Defendant has met the first procedural hurdle.

The second procedural requirement entails the submission of changes within thirty days after the deponent has been notified by the court reporter that the transcript is available for review. "Rule 30(e)'s thirty-day clock begins to run when the party is notified by the court reporter that [the] transcript is available for review, *not* when the party or deponent physically receives the transcript from the court reporter."[10] Here, the dates of notification and receipt were the same. On March 10, 2015, the court reporter sent the Defendant an e-mail with the full- and mini-size versions of his deposition transcript attached.[11] The Defendant sent a reply e-mail on April 10, attaching his corrections to the transcript.[12] The thirty-day deadline expired on April 9,[13] and the Defendant's deposition corrections were therefore untimely. At oral argument on the Motion to Strike, the Defendant admitted that his corrections were one day late. Nevertheless, in his objection to the Motion to Strike, the Defendant argues that the tardiness of the corrections should be forgiven

---

[9] *Id.* at 169:3.

[10] *EBC, Inc.*, 618 F.3d at 266; *see also Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1224 (9th Cir. 2005) ("[T]he thirty-day correction clock begins upon notification of availability, not possession.").

[11] Docket No. 92, Trustee's Motion to Strike Defendant's Deposition Corrections Pursuant to Fed. R. Civ. P. 30(e), Ex. D.

[12] *Id.*

[13] *See* Fed. R. Bankr. P. 9006(a).

5

because "they are helpful and provide a full, complete and accurate set of answers,"[14] and "the interests of justice are furthered by having accurate and complete testimony."[15]

Doubtless every party offering deposition corrections believes that they make the record accurate and complete. If that argument were allowed to excuse late-filed errata sheets, however, it would vitiate the thirty-day deadline of Rule 30(e). Procedural rules cannot be disregarded. "The Tenth Circuit construes the 30-day period for submitting changes as 'mandatory' and that deposition changes are permissible under Rule 30(e) ***only*** if the party submitting the errata sheet establishes that the submission was provided to the court reporter within the time limit."[16] The Defendant missed the thirty-day deadline, but only by the slightest of margins, and this appears to be a case where minor untimeliness could have been excused, had the Defendant followed the correct procedure.

When the Rules require that an act be performed within a certain period, a party may obtain an extension of time through Federal Rule of Bankruptcy Procedure 9006(b). When the extension is requested after the time period has expired, the moving party must show cause and file a motion demonstrating that its failure to act within the specified time period was due to excusable neglect. The Defendant did not file a Rule 9006(b) motion, invoke that Rule in his objection or at oral

---

[14] Docket No. 101, Defendant's Memorandum in Opposition to the Trustee's Motion to Strike Steffensen's Deposition Transcript Corrections, at 2.

[15] *Id.* at 8.

[16] *U.S. ex rel. Smith v. Boeing Co.*, No. 05-1073-WEB, 2011 WL 587966, at *1 (D. Kan. Feb. 10, 2011) (citing *Rios*, 67 F.3d at 1552); *see also EBC, Inc.*, 618 F.3d at 266 ("Courts are entitled to enforce Rule 30(e)'s time limit strictly and strike untimely errata."); *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1304 (11th Cir. 2010) ("Courts uniformly disregard untimely errata sheets, treating them as a nullity; in other words, they treat the deponent as having waived her opportunity to make changes to her testimony."). *But see Hambleton Bros. Lumber Co.*, 397 F.3d at 1224 ("Missing the thirty[-]day deadline by a mere day or two might not alone justify excluding the corrections in every case."); *EBC, Inc.*, 618 F.3d at 266 n.12 (explaining that courts have discretion to forgive "minor untimeliness after the fact").

6

argument, argue excusable neglect, or make an informal request to extend the time to provide his corrections to April 10, 2015. A deadline missed, even if only by one day, does not evince compliance, and in the absence of a Rule 9006(b) motion, the Court concludes that the Motion to Strike could be granted on the untimeliness of the Defendant's corrections alone.

The closest the Defendant approaches a Rule 9006(b) motion is the point at which his objection asks the Court "to order that his Corrections will be allowed even if they were one day late." Similarly, he requested at oral argument to have the Court waive the violation of Rule 30(e)'s thirty-day deadline. He then stated that his failure to meet the April 9 deadline was due to a simple counting error—he had forgotten that there were thirty-one days in March. Courts "have a limited and neutral role in the adversarial process, and are wary of becoming advocates who . . . make a party's case for it."[17] The Defendant's requests and statements regarding the thirty-day deadline are attenuated, but resemble the building blocks of a motion for Rule 9006(b) relief. Even if the Court construed them as a kind of Rule 9006(b) motion and accepted that misremembering the number of days in a month constitutes excusable neglect, which the Court is inclined to do, thereby extending the deadline to submit deposition corrections until April 10, the Defendant would still falter on Rule 30(e)'s third and final procedural hurdle.

That hurdle "requires the party or deponent seeking to change a deposition transcript to include with the proposed changes a statement of reasons for making them."[18] In other words, the deponent needs to explain why he is making the changes, which the Court views as one of the more vital hurdles that the deponent must overcome. A statement of reasons is not a minor procedural

---

[17] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998).

[18] *EBC, Inc.*, 618 F.3d at 266.

requirement; it "is an important component of errata submitted pursuant to [Rule] 30(e), because the

statement permits an assessment concerning whether the alterations have a legitimate purpose."[19]

Such purposes include correcting testimony that the court reporter recorded incorrectly, such as if

the deponent's answer read "yes," but he had said "no," or amending formal errors, such as a

misspelling of a name.[20] But the purpose of Rule 30(e) does not "'allow one to alter what was said

under oath. If that were the case, one could merely answer the questions with no thought at all then

return home and plan artful responses. Depositions differ from interrogatories in this regard. A

deposition is not a take home examination.'"[21] To aid in distinguishing the permissible changes to

deposition testimony from the improper manipulation thereof, a detailed statement of reasons is

required.

> It is not enough for the witness to give general conclusory reasons for all the changes
> at the end of the transcript. Nor is it sufficient for the witness to record no reasons at
> all upon the deposition but merely to claim that the reasons are either explicit or
> reasonably implied from the circumstances. Rather, the witness must state the
> specific reason for the particular change after *each* modification. Courts often either
> strike errata sheets failing to include a statement of reasons explaining corrections,
> or order the witness to state the reasons with the requisite specificity.[22]

The Defendant did not provide a statement of reasons with his deposition corrections, nor

did he provide such a statement in his objection to the Motion to Strike. Instead, he argues that the

---

[19] *Hambleton Bros. Lumber Co.*, 397 F.3d at 1224–25.

[20] *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 n.5 (10th Cir. 2002) (citing *Greenway v. Int'l Paper Co.*, 144 F.R.D. 322, 325 (W.D. La. 1992)).

[21] *Burns v. Bd. of County Comm'rs*, 330 F.3d 1275, 1282 (10th Cir. 2003) (quoting *Garcia*, 299 F.3d at 1242 n.5).

[22] *Norelus*, 628 F.3d at 1305 (citations and internal quotation marks omitted); *see also EBC, Inc.*, 618 F.3d at 266 ("If the party or deponent proffering changes in the form or substance of a deposition transcript fails to state the reasons for the changes, the reviewing court may appropriately strike the errata sheet.").

8

corrections "are not in fact earth[-]shattering and do not fundamentally and substantively change his original testimony," but instead "were offered merely to make the record clear, accurate[,] and consistent."[23] According to the Defendant, since "there essentially has been 'no harm,' there ought to be 'no foul,'" and the Court should allow the corrections despite his failure to provide reasons for each one of them.

The Defendant's explanations are conclusory and insufficient, and his proposed corrections can be stricken due to his failure to provide a specific reason for each one. More importantly, however, the lack of a statement of reasons inhibits the Court's ability to discern whether the corrections have a legitimate purpose. Further, the facts of this case suggest that the purpose actuating the corrections may not be appropriate. The Defendant submitted his corrections only days after the Plaintiff filed her Motion for Partial Summary Judgment, which may indicate that the Defendant generated the corrections to defeat the Plaintiff's motion. This indication finds support in the Defendant's opposition to the Motion for Partial Summary Judgment. There, the Defendant demonstrates the corrections' purpose by arguing that the Plaintiff's motion cannot be granted because it "relies in substantial part" on the uncorrected version of his deposition transcript. In addition, the Defendant uses his corrections to dispute a number of the Plaintiff's undisputed material facts. It appears that the Defendant is attempting to rewrite his deposition testimony "to create a material factual dispute in a tactical attempt to evade an unfavorable summary judgment."[24]

---

[23] Docket No. 101, Defendant's Memorandum in Opposition to the Trustee's Motion to Strike Steffensen's Deposition Transcript Corrections, at 7.

[24] *Hambleton Bros. Lumber Co.*, 397 F.3d at 1225; *see also EBC, Inc.*, 618 F.3d at 267–68 ("As a general proposition, a party may not generate from whole cloth a genuine issue of material fact (or eliminate the same) simply by re-tailoring sworn deposition testimony to his or her satisfaction.").

Accordingly, the Defendant has not cleared all of the procedural hurdles imposed by Rule 30(e), and consequently, the Court is compelled to grant the Motion to Strike. Because the Defendant's proposed deposition corrections fail to meet Rule 30(e)'s procedural demands, at this time the Court does not need to address the substantive aspects of the Rule and determine the propriety of the changes, including whether the changes should be disregarded under the sham affidavit analysis prescribed by *Burns*.[25] Since the Defendant's deposition corrections have been stricken, the Plaintiff may properly rely on the original and uncorrected version of the Defendant's deposition to support her Motion for Partial Summary Judgment.[26]

### B.    *Defendant's Renewed Motion*

The Court will next address the Defendant's Renewed Motion, which seeks dismissal of all of the Plaintiff's claims. The Defendant has previously moved for summary judgment and requested the same relief.[27]

Under Federal Rule of Civil Procedure 56(a), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, the Court is required to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[28] Substantive law determines which facts are material and which

---

[25] *See Burns*, 330 F.3d at 1282. The Court will have occasion to revisit the sham affidavit issue in the context of the Defendant's opposition memorandum to the Plaintiff's Motion for Partial Summary Judgment, *see infra* Part II.C.

[26] *See Norelus*, 628 F.3d at 1305 ("[O]nce the court has excluded the putative errata document, the deponent's original, unamended transcript certified by the court reporter serves as the deponent's deposition testimony.").

[27] *See* Docket No. 11, Debtor/Defendant's Revised Motion to Dismiss and for Summary Judgment, at 1–2.

[28] Fed. R. Civ. P. 56(a).

are not. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[29] Whether a dispute is "genuine" turns on whether "the evidence is such that a reasonable [fact finder] could return a verdict for the nonmoving party."[30] In sum, the Court's function at the summary judgment stage is to "determine whether there is a genuine issue for trial."[31]

The moving party bears the burden to show that it is entitled to summary judgment,[32] including the burden to properly support its summary judgment motion as required by Rule 56(c).[33] If the moving party has failed to meet its burden, "summary judgment must be denied," and the nonmoving party need not respond because "no defense to an insufficient showing is required."[34] Once the moving party meets its initial burden, "the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."[35] The nonmoving party may not rely solely on allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial."[36]

---

[29] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[30] *Id.*

[31] *Id.* at 249.

[32] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[33] *See Murray v. City of Tahlequah, Okla.*, 312 F.3d 1196, 1200 (10th Cir. 2002).

[34] *Reed v. Bennett*, 312 F.3d 1190, 1194–95 (10th Cir. 2002).

[35] *Concrete Works of Colo., Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir.1994).

[36] *Celotex*, 477 U.S. at 324.

11

When considering a motion for summary judgment, the Court views the record in the light most favorable to the nonmoving party,[37] but the Court does not weigh the evidence or make credibility determinations.[38] "On cross-motions for summary judgment, each motion must be considered independently."[39]

At the outset, the Court notes that the Renewed Motion does not comply with Local Rule 7056-1(b), which governs the form and content of a motion for summary judgment. Under that Rule, a motion for summary judgment must include, among other things, "a section entitled 'Statement of Elements and Undisputed Material Facts,'" which in turn contains (A) the legal elements necessary for the movant to prevail, (B) citation to legal authority supporting those elements, and (C) for each element, a statement of the material facts required to satisfy that element that the movant asserts are not genuinely disputed.[40] In addition, the movant must cite "with particularity the evidence in the record supporting each factual assertion."[41]

The Defendant's Renewed Motion recites the statutory language of § 727(a)(2), (a)(3), (a)(4), and (a)(5), then provides what the Defendant refers to as a Statement of Undisputed Facts for each of those claims. While the text of the Bankruptcy Code is the starting point for any analysis of the viability of a § 727(a) claim at summary judgment, case law develops and fleshes out the legal

---

[37] *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1279 (10th Cir. 2013) (citation omitted).

[38] *Nat'l Am. Ins. Co. v. Am. Re-Insurance Co.*, 358 F.3d 736, 742–43 (10th Cir. 2004) (citing *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 533 (10th Cir. 1994)).

[39] *Hofmann v. Drabner (In re Baldwin)*, 514 B.R. 646, 650 (Bankr. D. Utah 2014) (citing *Rajala v. U.S. Bank (In re Christenson)*, 483 B.R. 743, 746 (Bankr. D. Kan. 2012)).

[40] Bankr. D. Ut. LBR 7056-1(b)(2) (2014). The Court adopted the current version of Local Rule 7056-1 on December 1, 2013.

[41] *Id.*

12

elements of a claim. The Defendant does not provide any case law in his Renewed Motion or reply

memorandum that describes and supports the legal elements of the relevant claims. Moreover, the

statements of facts for each claim contain a mixture of argument, conclusory allegations, and

immaterial facts. Because the Defendant's Renewed Motion does not satisfy the requirements of

Local Rule 7056-1, the Court could deny the motion on that basis alone. Despite this procedural non-

compliance, the Court is willing to look at the merits of the Defendant's arguments.

The Court will deny the Renewed Motion, however, because it fails to carry the Defendant's

burden to demonstrate the absence of a genuine dispute as to any material fact with regard to any of

the Plaintiff's claims. The Renewed Motion's principal deficiency is the evidence used to support

it. The Renewed Motion contains a signed statement, made under the penalty of perjury and verified

under oath, that the statements of undisputed fact contained therein are true and correct. In effect,

the Defendant's Renewed Motion doubles as his affidavit.[42] "The burden rests with the lawyers

desiring to practice before a court to submit evidence in conformity with the rules of that court."[43]

An affidavit submitted in support of or opposition to a motion for summary judgment must comply

with particular rules, including that it "must be made on personal knowledge, set out facts that would

be admissible in evidence, and show that the affiant . . . is competent to testify on the matters

stated."[44] In addition, affidavits must not merely present conclusory allegations unsupported by

---

[42] Accordingly, where the Court refers to the Defendant's affidavit, it refers to the Renewed
Motion as well.

[43] *Certain Underwriters at Lloyd's London v. Garmin Int'l, Inc.*, 781 F.3d 1226, 1231 (10th Cir.
2015).

[44] Fed. R. Civ. P. 56(c)(4).

specific facts.[45] Affidavits that do no more than offer such allegations are not enough to meet the moving party's burden on summary judgment[46] and are disregarded by courts.[47]

Certain "facts" in the Defendant's affidavit are conclusory and self-serving statements, particularly paragraphs 4, 5, 7, 10, 11, 18, 20, 24, and 38, as they either parrot the statutory language in order to reach the legal conclusion the Defendant desires or are made without the requisite factual support. Accordingly, the Court will not consider those paragraphs as facts. Moreover, many of the remaining statements in the Defendant's affidavit are either immaterial or are not facts at all, but argument. After reviewing the material facts in the Defendant's affidavit, the Court concludes that it does not satisfy the Defendant's burden on summary judgment.

In addition to his affidavit, the Defendant supports his Renewed Motion with three exhibits: (1) an internal memorandum from the Trustee's firm dated October 24, 2014, detailing which documents the Defendant had produced and some that were still missing; (2) a photograph of a storeroom full of file cabinets and file boxes showing an inspection of the Defendant's records

---

[45] *See Fitzgerald v. Corrections Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005) ("We have long held that 'conclusory allegations without specific supporting facts have no probative value.'") (quoting *Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990)); *see also BancOklahoma Mortgage Corp. v. Capital Title Co.*, 194 F.3d 1089, 1101 (10th Cir. 1999) ("While an affidavit is certainly an appropriate vehicle to establish a fact for summary judgment purposes, the affidavit must set forth facts, not conclusory statements.") (citation omitted); *Morgan v. Willingham*, 424 F.2d 200, 201 (10th Cir. 1970) ("[S]ummary judgment cannot rest on purely conclusory statements either in pleading or affidavit form.").

[46] *E.g.*, *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985) ("An affidavit that is essentially conclusory and lacking in specific facts is inadequate to satisfy the movant's burden.") (citation and internal quotation marks omitted); *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985) ("[M]ere statements of conclusions of law or ultimate fact cannot shift the summary judgment burden to the nonmovant.").

[47] *E.g.*, *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1201 (10th Cir. 2015) ("'[Courts] do not consider conclusory and self-serving affidavits.'") (quoting *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002)).

14

carried out by the Trustee's counsel and a paralegal as well as e-mails between the Defendant and

the Trustee's counsel discussing document production; and (3) e-mails between the Defendant and

the Trustee's counsel wherein the Defendant produces a number of documents and states that he

believes he has provided everything the Trustee has requested.

These three exhibits are only cited in support of the facts related to the Plaintiff's § 727(a)(3)

claim and they are insufficient to show the absence of a genuine dispute as to the facts underlying

the Plaintiff's other claims. In addition, they do not satisfy the Defendant's burden with regard to the

claim under § 727(a)(3). The essence of the Defendant's factual assertions with regard to this claim

is that he kept every piece of paper relating to his financial affairs and those of his business and that

he produced the same to the Trustee. Therefore, he concludes he has satisfied the statutory

obligations of § 727(a)(3) and cannot be denied a discharge under that provision. As the Court will

discuss in Part II.C.1, *infra*, the Court disagrees with the Defendant's argument. From a review of

the relevant case law developed on this issue, a debtor may turn over every document he has that is

related to his financial condition and still not merit a discharge if the documentation is insufficient.

The Defendant has not carried his burden to show a lack of a genuine dispute regarding the

sufficiency of his documents. The Court will deny the Defendant's Renewed Motion on all of the

Plaintiff's claims.

### C.    *Plaintiff's Motion for Partial Summary Judgment*

The Plaintiff's Motion for Partial Summary Judgment seeks summary judgment on the

Trustee's § 727(a)(3) and (a)(5) claims only.[48] The Plaintiff bases the § 727(a)(3) claim on the

Defendant's alleged failure to keep adequate records that principally concern his law practices,

---

[48] The Court hereby incorporates the summary judgment standards articulated in Part II.B, *supra*.

including contemporaneous accounting records, general ledgers, and documentation of loans made to those practices. The § 727(a)(5) claim is related to the § 727(a)(3) claim and alleges that the Defendant's inadequate records have made it impossible for the Trustee to determine where the Defendant's assets, including a debt owed to him by one of the law practices, have gone.

Here the Court must return to the issue of the Defendant's corrections to his deposition. At the close of oral argument, the Defendant noted that even if the Motion to Strike were granted, certain of his deposition corrections would have to be considered in opposition to the Plaintiff's Motion for Partial Summary Judgment. This is because the Defendant's opposition memorandum incorporates some of the deposition corrections in order to dispute the facts in the Plaintiff's Motion for Partial Summary Judgment. Like his Renewed Motion, the Defendant's opposition memorandum is made under the penalty of perjury and verified under oath, thereby serving double duty as a memorandum and an affidavit, and providing evidentiary support for the deposition corrections.

When a party submits an affidavit that conflicts with his prior sworn testimony, the Court must examine whether the affidavit should be excluded from consideration at the summary judgment stage as an attempt to create a sham issue of fact. Mere inconsistency with an affiant's prior sworn statements is not enough to disregard an affidavit; the Court must first conclude that the affidavit "'constitutes an attempt to create a sham fact issue.'"[49] In answering this question, courts consider whether: "(1) the affiant was cross-examined during his earlier testimony; (2) the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on

---

[49] *Law Co. v. Mohawk Constr. & Supply Co.*, 577 F.3d 1164, 1169 (10th Cir. 2009) (quoting *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986)).

16

newly discovered evidence; and (3) the earlier testimony reflects confusion which the affidavit attempts to explain."[50]

The Defendant's opposition memorandum uses his deposition corrections to dispute the following of the Plaintiff's facts: 11, 12, 13, 16, 20, 24, 26, 28, and 29.[51] After reviewing those corrections, the Court concludes that they are inconsistent with the Defendant's original, uncorrected deposition testimony. In most instances, the corrections augment and expand upon the deposition testimony, which is particularly problematic given the nature of the claims upon which the Plaintiff is moving for summary judgment. At their core, § 727(a)(3) and (a)(5) are concerned about a lack of information that prevents trustees and creditors from meaningfully examining a debtor's financial affairs or tracing his assets. If an affiant's prior deposition testimony suggests that relevant information is unavailable, piecemeal, or disorganized, an affidavit that attempts to depict a debtor's records as extant, coherent, and thorough should be viewed as inconsistent with that prior testimony. In the Court's view, that is what the Defendant is attempting to accomplish by including his deposition corrections in his opposition memorandum and affidavit.

For example, the eleventh fact in the Plaintiff's Motion for Partial Summary Judgment alleges that the "Defendant states that the only records he has to show personal loans from Defendant to SB were deposit records that were 'usually noted on the deposit slip.'"[52] The Defendant disputes this fact in part by relying on a correction to page 31, lines 23–25 of his deposition. Immediately prior to that point in the deposition, the Trustee's counsel had asked the Defendant: "Is there

---

[50] *Id.* (citation and internal quotation marks omitted).

[51] The corrections used to dispute facts 16 and 29 are the same.

[52] Docket No. 67, Plaintiff's Motion for Partial Summary Judgment, at 4. SB is an entity through which the Defendant practiced law. *See infra* notes 92–96 and accompanying text.

documentation in the form of accounting records to show personal loans from you to S-B Law

PC?"[53] The Defendant originally had answered, "Well, it would just be a deposit—the deposit

records, which were not from income, and usually noted on the deposit slip."[54] The Defendant's

correction would replace that answer with: "Yes. My definition of accounting records includes the

deposit slips into the company bank account, the notes made on those deposit slips, the working

papers for the yearly tax returns where I computed how much loss—and therefore loans—were

involved for that year, etc."[55]

In addition, the twenty-eighth fact in the Plaintiff's Motion for Partial Summary Judgment

alleges that the "Defendant does not have a ledger showing the amounts owed by SB to Defendant

and when preparing SB's tax returns he looks at the checks written from SB's bank account and

determines if those checks constitute a personal expense or a business expense."[56] The Defendant

disputes this fact in part by citing to page 144, line 23 of his deposition. The Trustee's counsel had

asked the Defendant: "But you don't have a ledger that shows the amount owed to Brian Steffensen

and the amount now being credited as a loan payback?"[57] In the uncorrected version of the

deposition, the Defendant responded: "Well, you know, the amounts coming back are small enough

---

[53] Docket No. 68, Ex. 9 to the Plaintiff's Motion for Partial Summary Judgment, Deposition of
Brian W. Steffensen ("Defendant's Deposition"), 31:20–22.

[54] *Id.* at 31:23–25.

[55] Docket No. 81, Defendant's Verified Memorandum in Opposition to Hunt's Motion for Partial
Summary Judgment, at 7.

[56] Docket No. 67, Plaintiff's Motion for Partial Summary Judgment, at 7.

[57] Defendant's Deposition, at 144:20–22.

18

that there's no chance that the loan is extinguished."[58] The Defendant's correction would insert before that answer: "I don't know what you mean by 'ledger,' but I have in my records notations each year as to the amount of loans made to the company and the amount of repayments made during that year."[59]

These corrections are representative of the other corrections' general tenor: The Defendant's additions to and alterations of his testimony make his answers more certain and his descriptions more detailed. The corrections also tend to repeat, in slightly different forms, the Defendant's assertion that he possesses records that show how much money he loaned to various entities through which he practiced law and his assertion that he can calculate the amount of the loans using those records. The Court therefore concludes that these corrections impermissibly contradict and vary the Defendant's prior sworn original deposition testimony.

The Court also concludes that the corrections constitute an attempt to create a sham issue of fact[60] under the *Franks* factors. First, although the Defendant was not cross-examined at his deposition, cross-examination was available to him. He simply declined to take advantage of the opportunity, stating at the close of the deposition, "I don't have any questions of myself."[61] The first *Franks* factor does not necessarily weigh against finding a sham issue of fact if the deponent was not

---

[58] *Id.* at 144:23–25.

[59] Docket No. 81, Defendant's Verified Memorandum in Opposition to Hunt's Motion for Partial Summary Judgment, at 15.

[60] The Court is uncomfortable with the use of the word "sham" as it could connote a nefarious motive. The Court's use of the word "sham" does not apply such a connotation here; the Court is using the word in accordance with case law.

[61] Defendant's Deposition, at 169:2–3.

cross-examined; it is enough if he was subject to cross-examination.[62] Second, the Defendant had

access to the pertinent evidence during his deposition, and the corrections employed in the affidavit

are not based on newly-discovered evidence. Instead, the corrections attempt to paint the prior-

discovered evidence in a more comprehensible and coherent light. Third, the deposition transcript

does not evince confusion on the Defendant's part. Some of his answers may show indecisiveness

or imperfect memory, but not confusion. In addition, the Defendant's deposition was thorough; he

answered the same or similar questions multiple times and had ample opportunity to clarify his

answers during the deposition. For these reasons, the Court will strike from the Defendant's

opposition memorandum and affidavit all deposition corrections and will not consider them in

conjunction with the Plaintiff's Motion for Partial Summary Judgment.

It is a venerable principle, often repeated, that a "central purpose of the Code is to provide

a procedure by which certain insolvent debtors can reorder their affairs, make peace with their

creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the

pressure and discouragement of preexisting debt.'"[63] The Code achieves that purpose by discharging

a debtor's pre-petition debts. There are provisions that deny a debtor's discharge, but "[b]ecause of

the importance of the discharge in bankruptcy, the grounds for denying a discharge as set forth in

---

[62] *See Juarez v. Utah Dept. of Health Family Dental Plan*, No. 2:05CV0053PGC, 2006 WL 2623905, at *6 (D. Utah Sept. 11, 2006) ("Counsel's failure to take advantage of the opportunity to cross-examine [the deponent] does not defeat this prong of the test. To hold otherwise would allow a party to undermine the *Franks* test merely by submitting an affidavit contradicting her own prior testimony after the party's counsel chose not to cross-examine her as a witness."), *aff'd*, 263 F. App'x 726, 2008 WL 313671 (10th Cir. Feb. 5, 2008).

[63] *Grogan v. Garner*, 498 U.S. 279, 286 (1991) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)).

subsections (1) through (10) of § 727(a) are narrowly construed."[64] A party seeking to deny a debtor's discharge must prove its case by a preponderance of the evidence.[65]

### 1.     Plaintiff's § 727(a)(3) Claim

Section 727(a)(3) denies a debtor's discharge where "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information . . . from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."[66] "The purpose of § 727(a)(3) is to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs. This statute ensures that trustees and creditors will receive sufficient information to enable them to trace the debtor's financial history; to ascertain the debtor's financial condition; and to reconstruct the debtor's financial transactions."[67] Disclosure of this information "removes the risk to creditors of the withholding or concealment of assets by the bankrupt under the cover of a chaotic or incomplete set of books or records."[68]

A review of the relevant case law is appropriate here. In order to state a prima facie case under § 727(a)(3), a plaintiff must show that the debtor "failed to maintain and preserve adequate records and that the failure made it *impossible* to ascertain his financial condition and *material*

---

[64] *Bank One v. Kallstrom (In re Kallstrom)*, 298 B.R. 753, 758 (B.A.P. 10th Cir. 2003).

[65] *See Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1293 (10th Cir. 1997).

[66] § 727(a)(3).

[67] *Peterson v. Scott (In re Scott)*, 172 F.3d 959, 969 (7th Cir. 1999) (citations and internal quotation marks omitted).

[68] *Caneva v. Sun Cmtys. Operating Ltd. P'ship (In re Caneva)*, 550 F.3d 755, 761 (9th Cir. 2008) (citation and internal quotation marks omitted).

*business* transactions."[69] In this context, "impossible" should not be read to require a plaintiff to

exhaust all theoretical means to determine the debtor's financial condition. "[A] party objecting to

discharge need show only that it cannot ascertain the debtor's financial condition and recent business

transactions *from the records provided*. It is not necessary to show that there is no conceivable way

to ascertain the financial condition of the debtor."[70] If the plaintiff carries this burden, the burden

shifts to the debtor to justify his failure to keep and preserve adequate records.[71] Unlike other

provisions of § 727(a), the debtor's intent is not an element of a cause of action under § 727(a)(3).[72]

"It is up to the bankruptcy court's broad discretion to determine on a case by case basis whether the

records produced by the debtor are sufficient."[73]

Although "[t]he statute does not require absolute completeness in making or keeping

records,"[74] it is equally clear from the case law that a debtor may produce all the records he has and

---

[69] *Brown*, 108 F.3d at 1295.

[70] *Jacobowitz v. Cadle Co. (In re Jacobowitz)*, 309 B.R. 429, 438 (S.D.N.Y. 2004); *see also PNC Bank, Nat'l Ass'n v. Buzzelli (In re Buzzelli)*, 246 B.R. 75, 97 (Bankr. W.D. Pa. 2000) (noting that Congress did not intend for creditors to expend "an infinite amount of time, money, and effort in organizing, reconstructing, and/or independently investigating a debtor's affairs").

[71] *Brown*, 108 F.3d at 1295.

[72] *Scott*, 172 F.3d at 969.

[73] *Pu v. Mitsopoulos (In re Mitsopoulos)*, 487 B.R. 604, 611 (Bankr. E.D.N.Y. 2013) (citation and internal quotation marks omitted).

[74] *Caneva*, 550 F.3d at 761; *see also Blackwell Oil Co. v. Potts (In re Potts)*, 501 B.R. 711, 718 (Bankr. D. Colo. 2013) ("Section 727(a)(3) does not require a debtor to provide perfect or even complete records."); *Mitsopoulos*, 487 B.R. at 611–12 ("The debtor is not required to keep an impeccable system of bookkeeping, or to maintain records so complete that he can satisfy an expert in business.") (citation and internal quotation marks omitted).

still not meet the test imposed by § 727(a)(3).[75] Quantity is not a substitute for quality.[76] "[T]he

trustee and creditors are not required to ferret out the required records,"[77] and records that are chaotic

or disorganized to the extent that an intelligent inquiry into the debtor's financial condition cannot

be made will not meet § 727(a)(3)'s requirements.[78] "The test is whether there is available written

evidence made and preserved from which the present financial condition of the bankrupt and his

business transactions for a reasonable period in the past may be ascertained."[79]

In addition, "[o]ral testimony is not a valid substitute or supplement for concrete written

records."[80] Lastly, a debtor must keep and preserve records commensurate with the complexity of

his financial condition.[81] The law does not expect an unsophisticated wage earner's records to be as

---

[75] *See Caneva*, 550 F.3d at 764 ("The terms of 11 U.S.C. § 727(a)(3) do not condition a debtor's discharge on the presentation of the documents that he did keep and preserve.").

[76] *Schechter v. Hansen (In re Hansen)*, 325 B.R. 746, 762 (Bankr. N.D. Ill. 2005); *see also Miller v. Pulos (In re Pulos)*, 168 B.R. 682, 691 (Bankr. D. Minn. 1994) ("[I]t is not quantity, but quality, that is relevant to the § 727(a)(3) inquiry.").

[77] *Cadle Co. v. Jacobowitz (In re Jacobowitz)*, 296 B.R. 666, 670 (Bankr. S.D.N.Y. 2003); *see also In re Juzwiak*, 89 F.3d 424, 429 ("[T]he burden is not on the creditor to organize and reconstruct the debtor's business affairs. . . . Creditors are not required to sift through documents and attempt to reconstruct the flow of the debtor's assets.") (citations and internal quotation marks omitted); *In re Esposito*, 44 B.R. 817, 827 (Bankr. S.D.N.Y. 1984) ("[I]t is not the intent of the Bankruptcy Code to inflict upon the Trustee the burden of sifting through every shred of the remaining records, no matter how great the cost, in the hope of piecing together a debtor's financial condition.").

[78] *See Union Planters Bank, N.A. v. Connors*, 283 F.3d 896, 899 (7th Cir. 2002) ("It is the debtor's duty to maintain and provide the court with organized records of its financial dealings."); *see also Frommann v. Krohn (In re Frommann)*, 153 B.R. 113, 118 (Bankr. E.D.N.Y. 1993) ("The debtor bears the burden of retaining comprehensible records.").

[79] *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3d Cir. 1992).

[80] *Juzwiak*, 89 F.3d at 429.

[81] *See State Bank of India v. Sethi (In re Sethi)*, 250 B.R. 831, 839 (Bankr. E.D.N.Y. 2000) ("[T]he more complex the debtor's financial situation, the more numerous and detailed the

thorough as those of a large corporation. "In general, a higher standard of recordkeeping will be required, as a prerequisite to discharge, of Chapter 7 debtors who are sophisticated business persons."[82] "When a debtor is engaged in business, he has a duty to maintain records in a manner consistent with what is normally expected of businesses of the same complexity."[83]

At the outset, the Court finds that the Defendant is a sophisticated business person who is subject to a higher standard of accountability in his recordkeeping than the typical wage earner. The Defendant is an attorney who has practiced law for approximately thirty-five years and has experience in bankruptcy law. He has a bachelor's degree and a law degree from respected universities.[84] He practiced law for a period of time with a firm in Salt Lake City and left that firm for his own practice.[85] Although the practice has been relatively small—at various times it was a solo practice or had a handful of associates—it is still a business.[86] With that framework in mind, the Court will address the parties' arguments.

The Defendant first argues that the Plaintiff has failed to carry her burden on summary judgment to show that his records are inadequate. He bases this argument on the "plain meaning"

debtor's financial records should be."); *Pulos*, 168 B.R. at 692 (same).

[82] *Potts*, 501 B.R. at 719 (citation omitted); *see also Meridian Bank*, 958 F.2d at 1231 ("Sophisticated business persons are generally held to a high level of accountability in record keeping."); *Cottini v. Blanchard (In re Blanchard)*, 516 B.R. 1, 16 (Bankr. N.D.N.Y. 2014) ("The more sophisticated debtor will be held to a higher standard of accountability.").

[83] *Jacobowitz*, 309 B.R. at 436 (citations omitted); *see also Bailey v. Fry (In re Fry)*, No. 11-02374, 2012 WL 3782555, at *5 (Bankr. D. Utah Aug. 31, 2012) (noting that the nature of the business enterprise, the sophistication of the debtor, and the quality of the records are relevant to a § 727(a)(3) inquiry).

[84] *See* Defendant's Deposition at 6:24–7:3.

[85] *Id.* at 8:7–9:6.

[86] *Id.* at 8:9–15, 9:23–10:13, 18:12–24.

doctrine of statutory construction, arguing that the statute only demands that a debtor keep and maintain records.[87] The Defendant defines those words equivalently, asserting that they mean to hold or retain something already in existence. Therefore, he concludes that a debtor has no duty to create records.[88] The Defendant is incorrect as a matter of law, which, as the Court explains hereafter, forms a central strong point of the Plaintiff's case. If the Defendant's argument were extended to its logical boundaries, a debtor who had created no records at all would merit a discharge because he had not failed to "keep and preserve" anything. This would be, as the case law refers to it, an "absurd" result and one not consonant with the Code's aim of portraying a debtor's financial condition accurately and clearly. An interpretation of statutory text that leads to an absurd result is "to be avoided if alternative interpretations consistent with the legislative purpose are available."[89] Case law supplies such an alternative interpretation of § 727(a)(3)'s text that aligns with its purpose:

> In this context, 'keep' and 'preserve' are not synonyms. 'Keep' has the same meaning it would have in phrases such as 'to keep a diary' or 'to keep a record,' that is, to maintain a record by entering it in a book. Otherwise, the repetition of the word 'preserve' is superfluous, a disfavored result. . . . [T]he text of the statute does not merely require that the debtor not lose any records; rather, it authorizes denial of discharge where the debtor 'fails to act' unless the 'failure to act' is justifiable. This language places an affirmative duty on the debtor to create books and records accurately documenting his business affairs.[90]

---

[87] The statute uses the words "keep or preserve," but the difference is not material for purposes of the Defendant's argument.

[88] In his reply memorandum, the Defendant argues: "The Trustee's only complaint regarding financial records is that Steffensen failed to create quick books accounting records, but: (i) There is no obligation under the Code to create records – just to not lose, destroy or otherwise fail to maintain records which previously were created and existed." Docket No. 103, Defendant's Reply Memorandum in Support of Steffensen's Motion for Summary Judgment, at 3–4.

[89] *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982).

[90] *Scott*, 172 F.3d at 969 (citations omitted); *see also Caneva*, 550 F.3d at 762 (a debtor has an affirmative duty to create books and records); *Agai v. Antoniou (In re Antoniou)*, 527 B.R. 71, 81

This alternative interpretation does not go against the plain meaning of the statute. Instead, it is rooted in the plain meaning of the statute. It employs a different, yet ordinary definition of "keep," one that not only avoids surplusage in the statutory text, but also furthers the well-recognized aim of § 727(a)(3). While the Defendant's interpretation uses a common definition of "keep," the Court is persuaded that the Seventh Circuit, and the courts that have followed it, are correct on this point.

From the incorrect premise that he had no duty to create records, the Defendant argues that since the Plaintiff has not provided any evidence that he has lost or destroyed his financial records, the Plaintiff's motion should be denied. This is incorrect;[91] a debtor need not lose or destroy any records to have his discharge denied under § 727(a)(3). It is enough if the records he did keep are inadequate. The Court now turns to the central issue regarding the Plaintiff's § 727(a)(3) claim: whether the Defendant's records are sufficient to meet the statute's requirements.

The Plaintiff alleges that there is an overall lack of records, including a general ledger for at least one of the Defendant's businesses, contemporaneous accounting records and statements, and a ledger evidencing loan transactions, and without which the Plaintiff alleges the Defendant's financial condition cannot be ascertained. Based on the evidence submitted in support of the Plaintiff's Motion for Partial Summary Judgment, the Court finds it undisputed that the Defendant has formed a succession of entities through which he has practiced and continues to practice law.[92]

---

(Bankr. E.D.N.Y. 2015) (same); *Deangelis v. Von Kiel (In re Von Kiel)*, 461 B.R. 323, 338 (Bankr. E.D. Pa. 2012) (same); *Transworld, Inc. v. Volpe (In re Volpe)*, 317 B.R. 684, 692 (Bankr. D.S.C. 2003) (same).

[91] *See Juzwiak*, 89 F.3d at 430 (affirming the district court's reversal of the bankruptcy court, whose decision to grant the debtor a discharge "seemed heavily influenced by the fact that there was no evidence that [the debtor] had concealed or destroyed any records").

[92] Defendant's Deposition, 8:17–14:5, 159:5–10.

It is also undisputed that the Defendant and his wife loaned money to these entities.[93] The Defendant

documented the loans by "usually" making a notation on the deposit slip.[94] There do not appear to

be any other contemporaneous records documenting the loans. While these entities were operational,

they would issue checks to various parties, including the Defendant as payments on the loans.[95] On

occasion, however, the Defendant would, instead of writing a check, transfer funds directly from

SB's bank account to his own.[96] The Defendant's wife would also receive checks, sometimes as

repayment of loans, other times for the Defendant's "contributions to family expenses, characterized

as a draw loan payback."[97] As signer of the checks, the Defendant would try to note on the check

memo line when it was a loan payment.[98] The Defendant would also write checks from SB's bank

account to pay for his personal expenses.[99]

---

[93] *Id.* at 21:8–13, 89:20–90:2. Some of these loan funds came from money that was loaned to the Defendant personally. *Id.* at 23:17–24:2, 29:14–30:7. Other loan funds came from money the Defendant received as a plaintiff in a lawsuit. *Id.* at 30:14–31:8.

[94] *Id.* at 21:14–19, 31:20–25.

[95] *Id.* at 32:24–33:3. The Defendant characterized any check paid to him by S-B Law PC ("SB"), one of the law practice entities, as a loan repayment. *Id.* at 33:23–25.

[96] *Id.* at 66:20–67:10. SB was the entity in existence when the Defendant filed his bankruptcy petition, *see id.* at 13:4–6, and was wholly owned by the Defendant. Docket No. 12, Defendant's Answer ¶ 14.

[97] *Id.* at 49:11–15.

[98] *Id.* at 85:19–20, 86:13–14, 89:2–10. Not all checks had a notation on the memo line. *See id.* at 81:13–24.

[99] *Id.* at 82:22–83:2, 87:24–88:4; 90:7–11. It is not always clear from looking at a check whether the expense was personal or business. For example, the Defendant was questioned whether a particular check to Smith's Marketplace, a grocery store, was a personal draw. Although one might assume that items bought at a grocery store would be for personal use, here the Defendant stated that the check was not a personal draw because he had bought food and drinks for the office refrigerator. *Id.* at 82:7–11. In addition, the Defendant did not know how he categorized a

When the Defendant prepared a given year's tax return for an entity, he would gather the entity's bank statements and examine every check and deposit slip to determine how to characterize the transactions.[100] For deposits, the Defendant would look at the deposit slips he had retained,[101] or if he did not have a deposit slip for a particular deposit, he would look at what cases, if any, settled at around the same time as the deposit to inform his decision on how to characterize the deposit.[102] By looking at the source of funds, he would divide deposits into binary categories: Either the deposit was income or a loan, and "[i]f it's not income, it's a loan."[103] For expenses, he would examine the checks and receipts, if he had retained them,[104] and categorize each check according to the various categories of expenses listed on the tax return.[105] The Defendant did not count loan repayments as an expense.[106] After he had totaled the entity's income and expenses, he would determine whether it produced a profit, which, according to the Defendant, would flow through to him since the entities are S Corporations under the Internal Revenue Code.[107]

---

particular check to Costco on the relevant tax return without looking at the receipt, if he had kept it. *Id.* at 85:15–86:2.

[100] *Id.* at 34:6–35:18.

[101] The Defendant had aggregated the deposit slips, along with expense receipts, in a folder, envelope, or envelopes of "bank stuff." *Id.* at 35:22–36:17. The Defendant later clarified that there is not a single file with source documents. *Id.* at 146:14–147:17.

[102] *Id.* at 53:5–54:1, 91:16–25.

[103] *Id.* at 28:24–29:1.

[104] *Id.* at 85:19–86:2.

[105] *Id.* at 34:24–35:7.

[106] *Id.* at 35:11–12.

[107] *Id.* at 35:13–18, 158:6–14.

28

The Defendant has not kept a ledger showing the amount of the loans extended to his law practice entities, the sums that have been paid back, and the balance currently owing.[108] He has not kept a ledger because the amounts being repaid "are small enough that there's no chance that the loan is extinguished."[109] To the Defendant, the amounts that have been advanced to his law practice entities dwarf the amounts that have been repaid such that he does not believe it is "necessary" or "important enough" to create a ledger or other document that tallies the loans, repayments, and current balance.[110] In addition, the Defendant did not keep accounting data in QuickBooks, an accounting software program, for approximately two years prior to the petition date.[111] He had used QuickBooks at one time with S Law PC, the law practice entity that preceded SB.[112] But the Defendant had shut down S Law PC in 2006 and started SB because the QuickBooks data for S Law PC were badly "fouled up" and "all wrong."[113]

When the Defendant formed SB in 2006, he continued using QuickBooks and hired Nannette Calhoun to perform bookkeeping services and prepare tax returns for his entities.[114] According to the Defendant, Ms. Calhoun had calculated the amount of the loans "as best [as] she could" in

---

[108] *Id.* at 144:20–25, 146:4–19, 147:9–13.

[109] *Id.* at 144:23–25.

[110] *See id.* at 146:14–147:17.

[111] *Id.* at 86:3–6; *see also* Docket No. 81, Defendant's Verified Memorandum in Opposition to Hunt's Motion for Partial Summary Judgment, at 5.

[112] *See* Defendant's Deposition, at 12:24–13:6.

[113] *Id.* at 13:1–3, 150:11–18.

[114] *Id.* at 28:13–22, 32:1–23, 36:9–12.

2006,[115] but the Court has not been provided with that figure or information on how she arrived at that number. Ms. Calhoun had left the Defendant's employment by 2008, although she continued to work for him as an independent contractor for some time thereafter.[116] When she left, the Defendant tried to maintain the accounting data himself, but he "got behind."[117] In approximately 2011, the hard drive containing this data failed, and the Defendant lost the data.[118] The Defendant had stopped entering data into QuickBooks prior to the hard drive failure and he has not used QuickBooks or another accounting program since the hard drive failure.[119] Nor has he created by hand check registers, profit and loss statements, balance sheets, sources and uses of cash, or general ledgers.[120]

Based on these facts, which the Court views in the light most favorable to the Defendant, the Court concludes that the Plaintiff has carried her burden on summary judgment to demonstrate that the Defendant's records are insufficient under § 727(a)(3). The loans that the Defendant has made to, and the repayments he has received from, his law practice entities form a substantial part of his financial affairs. Therefore, records that document these transfers with substantial completeness and accuracy are necessary to understand the Defendant's financial condition and material business

---

[115] *Id.* at 28:13-22, 146:8–9.

[116] *Id.* at 32:6–11.

[117] *Id.* at 150:25–151:5. The Defendant testified that he "always intended to go back and try and [create QuickBooks data], but the job becomes bigger and bigger and bigger the more time passes and the more data has not been entered." *Id.* at 152:21–24.

[118] *Id.* at 25:22–23, 151:3–5, 152:11–12.

[119] *Id.* at 152:25–153:6.

[120] *Id.* at 153:11–22.

transactions. Although the Defendant's law practice entities are not in bankruptcy, the majority of courts to address the issue have held that records from a business closely connected to the debtor are relevant to § 727(a)(3)'s record-keeping inquiry.[121] Therefore, a "lack of business records relating to a company substantially intertwined with a debtor may provide the basis for the denial of a debtor's discharge under § 727(a)(3)."[122] Here, the Defendant not only formed and owned his law practice entities, he has also engaged in a number of loan transactions spanning multiple years with those entities. The Court concludes that the Defendant and his law practice entities are sufficiently intertwined and closely connected to require the Defendant to keep and preserve sufficient documents related to those entities in order to satisfy § 727(a)(3)'s requirements.

The Defendant did not keep a ledger or other similar accounting document that would enable a third party to trace the history of the loan transactions. Instead, he argues that his financial condition can be ascertained from the "boxes and boxes" of what he terms "primary source financial and accounting documents," which include: (1) bills from vendors, (2) bills to clients, (3) deposit slips, (4) canceled checks, (5) bank statements, (6) tax return work papers, and (7) tax returns for the Defendant and his businesses.[123]

The Court disagrees. The Defendant may preserve and produce countless records yet not satisfy the statute's demands if they are inadequate. The question is not how much but what the

---

[121] *See U.S. Trustee v. Kandel (In re Kandel)*, No. 12-6003, 2015 WL 1207014, at *7–8 (Bankr. N.D. Ohio Mar. 13, 2015) (collecting cases).

[122] *Id.* at *8.

[123] Docket No. 81, Defendant's Verified Memorandum in Opposition to Hunt's Motion for Partial Summary Judgment, at 3, 18. To emphasize the number of documents he has kept and preserved, the Defendant attached twenty-one photographs to his opposition memorandum that show a storeroom with file cabinets and file boxes. Sixteen of the photographs show the contents of cabinet drawers and boxes—ostensibly the records that one would need to ascertain the Defendant's financial condition—in varying degrees of organization.

Defendant has kept and preserved. In addition, because mere volume of documents does not satisfy § 727(a)(3), the photographs mentioned in the prior footnote do not aid the Defendant's case, but instead tend to harm it. In the context of § 727(a)(3), "courts have held that 'too many' is just as bad as 'not enough,'"[124] at least in those cases when a trustee, creditor, or court must search through large quantities of documents in order to gather the information required to reconstruct the debtor's financial condition. A sophisticated business person like the Defendant is expected to have more voluminous records than those of the average wage earner. But what the photographs of boxes and file cabinets depict is a mass of documents, which a trustee, creditor, or court is not required to sift through in order to reconstruct a debtor's financial condition.

More importantly, however, the relevant records the Defendant has kept and preserved are not enough under the statute. "Many courts faced with checking account records, canceled checks, deposit slips, bank statements, and tax returns as the sole documentation of a debtor's financial history and condition have determined that such records are inadequate under § 727(a)(3)."[125] This is particularly true when, as in this case, the Defendant is a sophisticated business person, who is expected to keep records of a complexity in line with that of his business. A trustee, creditor, or court that wished to examine the loan transactions between the Defendant and his law practice entities would first have to examine the entities' yearly tax returns, but these are not enough. "[W]hile tax returns are important and necessary starting points for a trustee's analysis of a debtor's financial history, they are not adequate 'books and records' in and of themselves."[126] Further examination of

---

[124] *Havel v. Vandewoestyne (In re Vandewoestyne)*, 174 B.R. 518, 522 (Bankr. C.D. Ill. 1994).

[125] *Juzwiak*, 89 F.3d at 428.

[126] *Stanziale v. Boyajian (In re Boyajian)*, 486 B.R. 306, 325 (Bankr. D.N.J. 2013); *see also Antoniou*, 527 B.R. at 80 ("[T]ax returns alone 'are wholly insufficient for a creditor to ascertain

32

the underlying bank statements, deposit slips, receipts, and canceled checks would be required. In essence, such an examination would involve performing a task similar to what the Defendant does when he prepares his business tax returns.

The difficulties with such an examination are manifold. In the first place, a trustee, creditor, or court is not required to assemble discrete portions of a debtor's records as if they were pieces of a puzzle.[127] The Defendant testified that there was not one file with all the source documents, but even assuming that all of the underlying records were gathered together, there would remain the laborious task of sifting through them.

Second, the Defendant's records present practical problems. A debtor's records are not satisfactory if a trustee, creditor, or court would have to undertake a "time consuming and detailed analysis" of bank statements, canceled checks, receipts, and the like in order to determine the debtor's financial condition.[128] But that is what the Defendant's records require. One would have to go through multiple years of bank statements and collections of deposit slips, if available, and examine the notations thereon, trusting that the Defendant did not fail to make a notation on the deposit slips involving a loan. If a deposit slip was missing, one would have to examine which of the Defendant's cases settled at the approximate time of the deposit—assuming such information had been kept and preserved—and divine whether the deposit potentially reflected funds from that

---

the debtor's financial condition.'") (quoting *Sethi*, 250 B.R. at 839); *Malloy v. Goldstein (In re Goldstein)*, 123 B.R. 514, 524–25 (Bankr. E.D. Pa. 1991) ("[C]ase law has indicated that copies of tax returns, even when prepared by an accountant from whatever records the accountant can garner from the taxpayer, are not a significant indicia of sufficient record keeping.").

[127] *Frommann*, 153 B.R. at 118 (citation and internal quotation marks omitted).

[128] *Pher Partners v. Womble (In re Womble)*, 289 B.R. 836, 858 (Bankr. N.D. Tex. 2003), *aff'd* 108 F. App'x 993, 2004 WL 2185744 (5th Cir. Sept. 29, 2004).

settlement. One would also have to sort through multiple years of receipts and canceled checks, meticulously examining what notations the Defendant had made, if any, and decipher what was a business expense, what was a personal expense, and what was a loan repayment.[129] To emphasize the difficulty of this task, not even the Defendant is certain what every check represents.[130] He admitted that he would have to do "more research" to determine if one particular check to his wife was a loan repayment or a personal expense.[131] In addition, as SB's bank statements show, not every transaction was effected by check. SB transferred funds directly to the Defendant's account, and one attempting to classify those transfers would not even have the benefit of a check to examine.

As a result of these practical problems, a trustee, creditor, or court undertaking to discern the Defendant's financial condition would have to rely to a significant degree on his explanation of various transactions because they cannot be adequately understood without it. A substantial portion of the Defendant's deposition is devoted to questions posed by the Trustee's counsel aimed at determining what particular SB checks represent. At numerous points in the deposition, the Defendant is "filling in the blanks"[132] left in his records, but these statements do not aid his case because a debtor's "oral reconstruction of financial history" is not "an acceptable substitute for

---

[129] In addition, one would also have to determine who the payee was and what the payment represented. As the Defendant's deposition testimony shows, this is not always easy. SB had written checks to Mighty Leo, which were in fact payments of professional fees to Larry Reed, who is an attorney. Mighty Leo is the name of an LLC that Mr. Reed owns. Defendant's Deposition, at 57:3–19, 64:15–23. On at least one occasion, SB also wrote a check to cash with the apparent notation of "FLGR" on the memo line. The Defendant clarified that he had written "For LGR," and that meant the money went to Mr. Reed. *Id.* at 87:5–13.

[130] *See id.* at 61:9–17, 62:1–5, 85:4–22.

[131] *Id.* at 89:2–10.

[132] *Id.* at 84:8.

contemporaneous and adequately maintained historical books and records or a reliable updated equivalent."[133] Presented with tax returns built upon a record-keeping system of questionable reliability that requires supplemental oral explanations, the Court must conclude that the Defendant's records are inadequate as a matter of law for § 727(a)(3) purposes.

The Defendant argues that, contrary to the Plaintiff's assertions, it is quite easy to obtain figures regarding the loan transactions from his extant records. In support of his point, the Defendant has provided a summary of the amounts SB owed him based on his review of his financial records, which is attached as an exhibit to his opposition memorandum. It consists of a single page with three lines of type. The first lists the amount owing as of July 2009 as $83,930, the second lists the amount owing as of the end of 2012 as $122,620, and the third states: "Now that S-B Law PC is defunct, this is uncollectible." This summary lacks supporting documentation to show how the Defendant arrived at the figures thereon and is not a substitute for a ledger that records the history of the loan transactions. Accordingly, the summary is insufficient to create a genuine dispute regarding the adequacy of the Defendant's records.[134]

The Defendant also argues that his records were good enough to satisfy the IRS and the Utah State Tax Commission, so they should be sufficient for purposes of § 727(a)(3). He asserts that he has been under the close scrutiny of those taxing authorities for a number of years, and that they have not raised an objection to the tax returns he submitted. This argument has some persuasion but fails

---

[133] *Boyajian*, 486 B.R. at 325.

[134] *See Anderson*, 477 U.S. at 249–50 ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a [fact finder] to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.") (citations omitted).

because the Defendant has not apprised the Court of what documents the taxing authorities examined or the precise nature of their inquiry in comparison to § 727(a)(3), so there is no basis in the record to equate the review of the Defendant's tax returns to the issue in this case.

The Defendant's deposition testimony establishes that his method of recordkeeping was oriented toward allowing him to complete tax returns.[135] From his bank statements, deposit slips, receipts, and canceled checks, he would construct the tax returns for his law practice entities. But the Defendant has not sufficiently kept accounting records for those entities, and apparently elected not to create a ledger showing the loan transactions involving those entities because the unlikelihood of imminent repayment made it unnecessary in his view. A debtor "may have every right . . . to decline to keep books reflecting his business transactions[;] if he chooses to do so he seriously jeopardizes his ability to seek shelter under Chapter 7 of the Code."[136] His system may have been adequate for his purposes, but the law requires more. As a sophisticated business person, the Defendant did not keep and preserve the records that one would expect and need in order to understand his financial condition with substantial completeness and accuracy.

The burden now shifts to the Defendant to demonstrate that his failure to keep and preserve adequate records is justified. Whether a debtor was justified "depends largely on what a normal, reasonable person would do under similar circumstances."[137] Factors to consider include: "'the education, experience, and sophistication of the debtor; the volume of the debtor's business; the

---

[135] *See, e.g.*, Defendant's Deposition, at 153:22–23 ("I find that for my purpose, the bank accounts—the bank statements themselves are fine.").

[136] *Jacobowitz*, 309 B.R. at 439.

[137] *Antoniou*, 527 B.R. at 80.

complexity of the debtor's business; the amount of credit extended to debtor in his business; and any other circumstances that should be considered in the interest of justice.'"[138] "The fact that a business or law practice is small does not by itself justify the failure to keep records."[139] Although the Defendant does not couch his arguments in terms of justification, he offers three reasons why he did not create certain types of documents: (1) he could not afford to hire an accountant or bookkeeper to perform the work; (2) he intended to do it himself but was too busy; and (3) he did not need to do it because the documents he did create and retain were sufficient to give him an accurate picture of his business and personal finances for each year.[140]

The first reason is insufficient as a matter of law. "[I]nsolvency cannot be used as an excuse to avoid the obligation to provide records to illuminate [the debtor's] condition."[141] "To hold otherwise would relieve all debtors who *claim* to be living in poverty from any obligation to provide adequate records even where they are involved in relatively sophisticated businesses."[142] The Defendant does not claim to be living in poverty, but that does not alter the conclusion. If poverty does not suffice to justify a failure to keep and preserve records under § 727(a)(3), then neither does general bankruptcy. Moreover, the Defendant's justification ignores the fact that he does not need

---

[138] *D.A.N. Joint Venture v. Cacioli (In re Cacioli)*, 463 F.3d 229, 237 (2d Cir. 2006) (quoting *Meridian Bank*, 958 F.2d at 1231).

[139] *Meridian Bank*, 958 F.2d at 1232.

[140] To the extent that the Defendant also argues justification on the bases that he had no duty to create records or that he produced a large quantity of records, the Court concludes that those arguments are insufficient for the reasons articulated previously.

[141] *Meridian Bank*, 958 F.2d at 1232.

[142] *Jacobowitz*, 309 B.R. at 439.

an accountant or bookkeeper to create the records necessary to satisfy § 727(a)(3). He can—and at

some point in the past did—construct some accounting records. The Defendant attempts to foreclose

this possibility in his second reason, but it too is insufficient as a matter of law. The Code imposes

an affirmative duty upon debtors to create records, and debtors cannot avoid that duty by asserting

that there was not enough time to fulfill it.

The third reason is also insufficient as a matter of law. "'[T]he debtor's honest belief that he

does not need to keep the records in question, or that his records are sufficient, or his statement that

it is not his practice to keep additional records, does not constitute justification for failure to keep

or preserve records under § 727(a)(3).'"[143] The law requires that a debtor's records be complete and

accurate enough that a creditor, trustee, or court be able to ascertain his financial condition. A debtor

cannot claim compliance with § 727(a)(3) on the basis that he can make sense of his own records.

That is particularly true when, as here, the debtor uses a system of recordkeeping that he may be able

to navigate, but which is unclear to a creditor, trustee, or court without significant explanation from

the debtor.

The Defendant did not offer the computer's hard drive failure as a justification for his lack

of records, but even if the Court considered it, it would not provide justification. A hard drive failure

is ordinarily beyond a debtor's control, and would typically justify a lack of records. But in this case,

there is no indication that the records that were lost would have provided the detail necessary to

understand the Defendant's financial condition. More importantly, the Defendant had stopped

---

[143] *Mitsopoulos*, 487 B.R. at 614 (quoting *Sethi*, 250 B.R. at 839); *see also Aid Auto Stores, Inc. v. Pimpinella (In re Pimpinella)*, 133 B.R. 694, 698 (Bankr. E.D.N.Y. 1991) ("The debtor must do more than profess a belief that his records were sufficient or that it was not his practice to keep additional records.").

38

keeping accounting records prior to the hard drive failure, and he did not resume keeping records

afterwards. If the hard drive had failed on the eve of bankruptcy, that might present a different fact

pattern, but even if the hard drive had not failed, the Defendant would have no accounting records

for the two-year period leading up to the petition date.

Because the Plaintiff has met her statutory burden under § 727(a)(3), and the Defendant has

not carried his burden to show justification, the Court concludes that the Defendant's discharge

should be denied under § 727(a)(3).[144] Accordingly, it is not necessary to address the Plaintiff's claim

under § 727(a)(5).

## III.   CONCLUSION

The Court grants the Plaintiff's Motion to Strike and Motion for Partial Summary Judgment,

but denies the Defendant's Renewed Motion. A separate Order and Judgment will be issued in

accordance with this Memorandum Decision.

_____END OF DOCUMENT_____

---

[144] The Court appreciates that the result in this case may be harsh. However, the overwhelming body of case law persuades the Court that a debtor has a duty to keep and preserve—which means more than merely producing what one has—sufficient financial records under § 727(a)(3). The Defendant has not kept and preserved such records here.

**_____oooOooo_____**
**SERVICE LIST**

Service of the foregoing **MEMORANDUM DECISION** will be effected through the
Bankruptcy Noticing Center to each party listed below.


Jeffrey M. Armington
Steven T. Waterman
DORSEY & WHITNEY LLP
136 South Main Street, Suite 1000
Salt Lake City, UT 84101
    *Attorneys for Plaintiff*

Larry G. Reed
231 East 400 South, Suite 210
Salt Lake City, UT 84111
    *Attorney for Defendant*

Brian W. Steffensen
STEFFENSEN LAW
P.O. Box 2279
Salt Lake City, UT 84110
    *Attorney for Defendant*